# IN THE COURT OF APPEALS OF IOWA

No. 20-1685
Filed March 3, 2021

**IN THE INTEREST OF A.M., L.M., T.M., and K.M.,**
**Minor Children,**

**M.G., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Christopher Kemp, District Associate Judge.

A mother appeals the termination of her parental rights to four children. **AFFIRMED.**

Cathleen J. Siebrecht of Siebrecht Law Firm, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Tabitha J. Gardner, Assistant Attorney General, for appellee State.

Charles Fuson of Youth Law Center, Des Moines, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

A mother appeals the termination of her parental rights to her four children, born in 2007, 2016, 2018, and 2019. The juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(f) (2020) as to the two oldest children and section 232.116(1)(h) as to the two youngest children. In introduction, she argues the juvenile court erred

> in not granting additional time for reunification when [she] was actively addressing her substance abuse issues through inpatient treatment; the children were bonded to [her] and wanted to return to her care; one of the children was over age 10 and objected to termination; the children were placed with maternal relatives; and the father's rights were not terminated.

Interpreting the mother's ensuing arguments is a somewhat nebulous task, but we read her arguments to suggest that the court should have either applied one of the permissive exceptions to termination contained in section 232.116(3)(a) through (c), established a guardianship in the maternal grandparents in lieu of termination, transferred sole custody to the father followed by the entry of a bridge order and closure of the child-welfare proceedings, or allowed her additional time to work toward reunification.[1]

I. **Background**

This thirty-two-year-old mother began using illegal substances at the age of sixteen. The family came to the attention of the Iowa Department of Human Services (DHS) in April 2018, when the parents' third child was born and tested

---

[1] The mother does not specifically argue the State failed to meet its burden to establish the statutory grounds for termination or claim that termination is contrary to the children's best interests, so we need not address the first two steps of the three-step termination framework. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

positive for THC and methamphetamine.[2]  The parents admitted using marijuana almost daily during the pregnancy but denied methamphetamine use.  The State sought and obtained an order for temporary removal, and the children were placed in the temporary legal custody of the maternal grandparents.  The parents stipulated to continued removal at a subsequent removal hearing.  The children were adjudicated as children in need of assistance (CINA) in June.

In July, the mother tested negative for all illegal substances.  Thereafter, the mother did not display any behavioral indicators of substance abuse for a number of months.  In December, given the parents' participation in treatment and demonstration of sobriety, DHS recommended the children be returned to the parents' care.  The court ordered the children be returned to the parents' legal custody in its ensuing dispositional-review order.  Then, in March 2019, the mother gave birth to the youngest child.  At the time of the child's birth, the mother admitted to using marijuana three times per day during the pregnancy.  The mother and child tested positive for amphetamines, and the child tested positive for methamphetamine. The State moved for modification of placement as to the older three children, and the court returned custody of the children to the maternal grandparents. The State also sought and obtained an order for temporary removal of the youngest child, which was followed by a petition and ensuing order for CINA adjudication as to that child.

---

[2] The parents' second child also tested positive for THC at birth in 2016.  During an ensuing assessment, it was learned the mother previously tested positive for methamphetamine during a prenatal appointment.

Thereafter, the mother continued to use illegal substances, but she denied the same and largely avoided detection by the father and DHS. She also failed to meaningfully participate in substance-abuse treatment. As a result of continuing substance-abuse concerns, the State instituted termination proceedings as to the youngest three children in October 2019 and as to the oldest child in March 2020.

The matter proceeded to trial over two days in October 2020.[3] At the time of the termination hearing, the mother was about five months pregnant and had been residing in an inpatient-treatment facility for roughly one month. She testified her last use of drugs was just before she entered treatment. She admitted she entered inpatient treatment in part because it was a condition of her probation resulting from drug-possession charges and her probation officer advised her she would go to jail if she did not complete inpatient treatment. Our de novo review of the record discloses the mother's placement in inpatient treatment was not voluntary. The DHS worker testified he was advised by the mother's counselor that the mother would need to be in inpatient treatment for six months. However, the mother had reported to her counselor her desire to leave inpatient treatment shortly after the termination hearing. While the mother testified she was willing to stay in treatment, the counselor reported staff recommended the mother stay in inpatient treatment but the mother "verbalized that she is ready to leave and that there is little that can be done to keep her here."

At the termination hearing, the DHS worker opined the establishment of a guardianship would be contrary to the children's need for permanency and their

---

[3] The hearing was originally scheduled for March but was continued multiple times, largely because of the COVID-19 pandemic.

best interests. He was also against placing the children in the father's sole legal custody due to the father's inability to set boundaries with the mother, his continuous relationship with the mother despite her drug use and resulting continued need for the children's removal, and his lack of history in serving as the primary caretaker of the children.

In its termination ruling, the juvenile court highlighted the mother's continuous substance abuse over five years and four pregnancies and lack of meaningful insight about how her substance abuse affects her children. The court also homed in on the father's lack of protective capacity and the fact he puts his relationship with the mother over the children. The court concluded the children could not be returned to the mother's care. As to the father, the court concluded he "should be given the opportunity to parent these children as a sole caretaker before his rights are irreversibly terminated." The court looked to the mother's past performance and children's need for permanency in determining termination of the mother's parental rights is in the children's best interests. The court declined to apply a permissive exception to termination. The court did not specifically address the potential for establishing a guardianship in lieu of termination or transferring guardianship and sole custody to the father followed by the entry of a bridge order and closure of the child-welfare proceedings. The mother appeals.

II. **Standard of Review**

Our review is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary consideration is the best interests of the children, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the children's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

### III.    Analysis

As noted, we interpret the mother's arguments to suggest that the court should have either applied one of the permissive exceptions to termination contained in section 232.116(3)(a) through (c), established a guardianship in the maternal grandparents in lieu of termination, transferred sole custody to the father followed by the entry of a bridge order and closure of the child-welfare proceedings, or allowed her additional time to work toward reunification.

### A.    Permissive Exceptions

Iowa Code section 232.116(3) allows the court to decline to terminate parental rights under certain circumstances.  We first note the application of the statutory exceptions to termination is "permissive, not mandatory."  *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (quoting *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014)).  Iowa Code section 232.116(1)(a) allows the court to forego termination when "[a] relative has legal custody of the child."  Upon our de novo review, we find applicable the principle that "[a]n appropriate determination to terminate a parent child relationship is not to be countermanded by the ability and willingness of a family member to take the child."  *In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997). The children have long been in the care and custody of the maternal grandparents, during which the mother has continued to use illicit substances.  If this dynamic remains intact, the children will remain in the care of the grandparents, but the mother's track record shows she will also continue to use illegal drugs, the need for removal from her care will continue, and the children's permanency status will remain in limbo.  We decline to apply this exception to termination.

Section 232.116(3)(b) allows the court to not terminate parental rights when "[t]he child is over ten years of age and objects to termination." The oldest child is over ten years of age. While there was some evidence that the children wish to be in their mother's care, there was no specific evidence that the oldest child objects to termination. Even if the child did object and given that "[p]references of minor children while not controlling are relevant and cannot be ignored," "[t]he best interests of a child is not always what 'the child wants.'" *In re A.R.*, 932 N.W.2d 588, 592 (Iowa Ct. App. 2019) (citation omitted). We do consider a number of factors when weighing a child's preference, including (1) age and education level, (2) strength of preference, (3) intellectual and emotional make-up, (4) relationship with family members, (5) rationale for the decision, (6) advisability of honoring the child's desire, and (7) recognition that the court is not aware of all factors influencing the child. *Id.* Upon our de novo review of the record, we conclude the mother failed to meet her burden to show consideration of these factors weighs in favor of applying the exception. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (noting parent bears burden to establish an exception to termination). The mother presented no evidence on these factors, and she does not address their weight on appeal. We decline to apply this exception.

Iowa Code section 232.116(3)(c) allows the juvenile court to forego termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." We certainly acknowledge the children (at least the oldest two) are bonded to the mother, and we recognize that the children may suffer negative consequences as a result of termination. The question is "whether the child[ren]

will be disadvantaged by termination, and whether the disadvantage overcomes [the mother's] inability to provide for [their] developing needs." *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010). While we agree termination will pose disadvantages, we are unable to conclude severance of the parent-child bond will be detrimental to the children. We also decline to apply this exception.

### B.     Guardianship

The mother also suggests establishment of a guardianship in the maternal grandparents in lieu of termination is appropriate. *See* Iowa Code § 232.117(5) (authorizing the court, following a termination hearing, to enter an order in accordance with section 232.104 in lieu of terminating parental rights); *see also id.* § 232.104(2)(d)(1) (allowing for transferring of "guardianship and custody of the child to a suitable person"). However, the juvenile court did not rule on any request for the establishment of a guardianship in lieu of termination. Rather than raise the complaint for the first time on appeal, the proper procedure to preserve error was to file a motion raising the court's alleged oversight prior to appealing. *See Lamasters v. State*, 821 N.W.2d 856, 863 (Iowa 2012). In any event, on the merits, we would begin with the principle that "a guardianship is not a legally preferable alternative to termination." *A.S.*, 906 N.W.2d at 477 (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)). Although section 232.104(2)(d)(1) allows for the establishment of a guardianship as a permanency option, such an option can only be ordered if the court first finds that termination of the parent's rights is not in the children's best interests. *See* Iowa Code § 232.117(5) (permitting the option of entering a permanency order pursuant to section 232.104 if the court does not terminate parental rights); *see also id.* § 232.104(4) (setting forth the requirements

needed before a permanency order pursuant to section 232.104(2)(d) can be ordered); *see also B.T.*, 894 N.W.2d at 32–33. Determining the best permanency plan for children is a best-interests assessment. A guardianship, rather than termination, would not promote stability or provide permanency to the children and would be contrary to their best interests. *See In re R.S.R.*, No. 10-1858, 2011 WL 441680, at *4 (Iowa Ct. App. Feb. 9, 2011) ("So long as a parent's rights remain intact, the parent can challenge the guardianship and seek return of the child to the parent's custody.").

### C. Transfer of Sole Custody

Next, the mother appears to argue the juvenile court should have transferred sole custody of the children to the father in lieu of termination. However, transfer of custody to the other parent is one of the permanency options set forth in section 232.104(2)(d), so it has the same statutory prerequisites as the guardianship option. In other words, when the request for such transfer is made as part of a termination proceeding, there must first be a determination not to terminate rights, which can then spur a permanency analysis under section 232.104. Iowa Code § 232.117(5). As part of the permanency analysis, before the permanency options in section 232.104(2)(d) can be considered, the court must first determine termination of parental rights is not in the children's best interests, services were offered to correct the situation that led to removal, and the children cannot be returned home. *Id.* § 232.104(4). Only then can the permanency options in section 232.104(2)(d) be considered. *Id.* Upon our de novo review, we are unable to conclude that termination should not have been granted or transfer of custody to the father was the best permanency option. The father

had yet to demonstrate he could individually care for the children and set up appropriate boundaries to protect the children from the mother's ongoing substance abuse outside of a controlled setting. We reject the mother's request for implementation of this permanency option.

### D. Additional Time

To the extent the mother requests additional time to work toward reunification, we deny her request. If, following a termination hearing, the court does not terminate parental rights but finds there is clear and convincing evidence that the children are in need of assistance, the court may enter an order in accordance with section 232.104(2)(b). *Id.* § 232.117(5). Section 232.104(2)(b) affords the juvenile court the option to continue placement of children for an additional six months if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period." While the mother began inpatient treatment shortly before the termination hearing, given her track record, she has a long way to go before these children can be returned to her care. She has a long history of use of methamphetamine and other drugs that has been fraught with relapse, dishonesty, and successful evasion of detection. The mother would need to spend at least another four or five months in treatment and then demonstrate her ability to maintain sobriety in the community for an extended period of time before the children could be returned to her care, which we conclude would collectively take longer than six months. We are unable to conclude "the need for removal . . . will no longer exist at the end of the additional six-month period," and we therefore affirm the juvenile court's denial of the mother's request for an extension. *Id.* § 232.104(2)(b).

**IV.     Conclusion**

We affirm the termination of the mother's parental rights.

**AFFIRMED.**